STATE of Tennessee, Appellant,

v.

William Robert BUTLER, Appellee.

Supreme Court of Tennessee, at Jackson.

Dec. 28, 1981.

Jennifer Helton Small, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellant.

J. Houston Gordon, Gordon & Forrester, Covington, for appellee.

## OPINION

COOPER, Justice.

William Robert Butler was convicted of second degree murder and received a twenty year sentence, for shooting and killing his wife. He also was convicted of assault and battery for wounding a bystander in the same incident. On appeal of the murder conviction, the Court of Criminal Appeals concluded that the trial court committed prejudicial error (1) in ordering defense counsel to refrain from questioning juvenile prosecution witnesses about past juvenile court adjudications, and (2) in excluding evidence of threats by the deceased against the defendant, uncommunicated to him, which were tendered to show the state of mind of the deceased, and reversed the conviction. We granted the state's application for permission to appeal to review the action of the Court of Criminal Appeals. At issue also is the denial by the trial court of an amendment to Butler's motion for new trial.

The homicide victim was Mary Ellen Butler, the appellant's estranged wife. Mrs. Butler and her three children shared a mobile home with her sister-in-law, Cathy Overton, and Cathy Overton's son. Charles Lee Kirk, who was stationed at Millington Naval Air Station, spent the weekends at the trailer with Mrs. Butler. All of these parties and Jimmy Dale Perry, the teenage son of a neighbor, were present when Butler shot his wife.

The homicide occurred on the afternoon of February 15, 1979. Butler went to the trailer park where his wife lived, picked up two of her children and took them to a nearby store for a coca cola. When he brought the children home, Mrs. Butler went to the car and told Mr. Butler to stay away from her and the boys. Mrs. Butler and the children then walked toward the trailer. Mr. Butler called to his wife and asked her to come back to the car, that he wanted to talk with her. She told him that she did not have anything to say to him; however, when she reached the trailer door, she turned and started back toward the automobile. Just as Mrs. Butler turned, Ms. Overton reached toward her. Mrs. Butler continued to walk toward her husband's automobile. As she neared it, Mr. Butler fired several shots, three of which penetrated Mrs. Butler's body and a fourth grazed her arm. One of the bullets fired by Mr. Butler struck Jimmy Dale Perry, who was standing nearby.

Mr. Butler admitted shooting his wife, but insisted he did so in self-defense. He contended that Mrs. Butler was armed with a pistol given her by Cathy Overton at the moment Mrs. Butler turned from the door of the trailer to go back to the car, and that he could see the barrel of the gun extending from under her arms which were folded across her chest.

Ms. Overton, Mr. Kirk, Jimmy Perry, and Jerry Shahan saw the shooting, and the events leading to it. Jackie Shahan was inside the trailer and heard the shots. The four eyewitnesses and Jackie Shahan testified at trial. Needless to say, they saw no gun in the hands of Mrs. Butler. The eye-

witnesses also testified that Mrs. Butler's hands were at her side as she approached her husband's automobile.

In the opening stages of the trial, the prosecution moved *in limine* for an order prohibiting defense counsel from questioning Jackie Shahan about a prior juvenile court conviction for "shoplifting," and from questioning Jimmy Perry about his conviction for "a fist fight or for a beating, something physical." No questions were asked of the juveniles in the hearing, nor did either party seek to develop the true nature or severity of the offenses from other sources. Defense counsel did insist that he had a right to question the witnesses about prior juvenile convictions for "if they deny it, that goes to their credibility." The trial court granted the state's motion and put down a protective order regarding the juvenile witnesses, Jackie Shahan and Jimmy Dale Perry.

The Court of Criminal Appeals concluded that the protective order entered by the trial court "denied the appellant [Mr. Butler] effective cross-examination and was error of constitutional dimension, which 'no amount of showing of want of prejudice would cure,'" citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

■ It is fundamental that the right of cross-examination is essential to a fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297 (1973). The right of the cross examiner extends not only to test the perceptions and memory of the witness but also to discredit and impeach him. *Cf. Davis v. Alaska, supra. See also, Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). But *Davis* does not mandate that juvenile convictions can be used to impeach in the general sense, i.e., the way prior convictions are normally used for adult witnesses, and the way defense counsel indicated he intended to use the juvenile convictions of Jackie Shahan and Jimmy Perry. In *Davis*, the prosecutor moved to protect a crucial identification witness against any reference to his juvenile record

by the defendant on cross-examination. In opposing the motion, the defendant made it clear that he intended to probe the juvenile record to show the bias and prejudice of the witness and not merely to call his general good character into question. He argued that since the witness was on probation and was a potential suspect in the offense himself, he may have "acted out of fear of concern of possible jeopardy to his probation" in testifying for the prosecution. The trial court granted the protective order on the basis of a court rule and statute which prohibited an adjudication, order or disposition in a juvenile case admission in other proceedings. The United States Supreme Court reversed, holding that:

> ... the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. 415 U.S. at 312, 94 S.Ct. at 1108.

Justice Potter Stewart wrote a special concurring opinion just to point out that:

> The Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions. 415 U.S. at 321, 94 S.Ct. at 1112–1113.

Cases subsequent to *Davis v. Alaska* have consistently interpreted the decision to apply to situations where the attack on the credibility of a juvenile witness, through cross-examination about his past delinquency adjudications, is for the purpose of showing bias or prejudice and not to situations where the sole purpose of the attack is to impeach the general credibility of the witness. In *Corbett v. Bordenkircher*, 615 F.2d 722 (6th Cir. 1980), *Cert. denied*, 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed.2d 66 (1980), the Sixth Circuit concluded that no confrontation violation was established where the

credibility impeachment of the prosecution witness was premised solely upon the existence of a prior theft related conviction. The court distinguished *Davis v. Alaska*, concluding the decision had no application to impeachment on bad character but rather was directed at bias and prejudice of the state witness. *See also Burr v. Sullivan*, 618 F.2d 583 (9th Cir. 1980); *Cheek v. Bates*, 615 F.2d 559 (1st Cir. 1980); *United States v. Hitchmon*, 609 F.2d 1098, 1100 (5th Cir. 1979); *People v. Holsey*, 30 Ill.App.3d 716, 332 N.E.2d 699, 703 (1975); *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978); Annot., 63 A.L.R.3d 1112 (1975).

■ In the case now under consideration, defense counsel did not seek to impeach the juvenile witnesses for bias and prejudice through the showing of prior juvenile convictions, as permitted by *Davis v. Alaska*, but specifically sought only a challenge to the general credibility of the two witnesses. The proposed examination being for such a limited purpose, we see no confrontation issue resulting from the entry of the protective order.

The Court of Criminal Appeals also held that the prior adjudication of delinquency of Jackie Shahan—it being predicated upon a charge of "shoplifting"—was admissible to impeach his credibility under this court's holding in *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). In *Morgan*, the court dealt with impeachment, through proof of a prior conviction, of adult witnesses. The court there adopted Rules 608(b) and 609(a) and (b) of the Federal Rules of Evidence, to ensure "a higher degree of consistency, fairness and justice and [to] better serve the quest for truth." *Morgan* at 388. The court was not called upon and did not at that time expressly adopt Rule 609(d) of the Federal Rules of Evidence, which permits the use of a juvenile adjudication in very limited circumstances.

*Morgan*, therefore, left intact the general rule in effect in Tennessee and elsewhere, that juvenile convictions are not to be used for attacking the general credibility of a witness by cross-examination. *See* Annot., "Use of judgment in prior juvenile court proceeding to impeach credibility of witness," 63 A.L.R.3d 1112 (1975). Most of these cases are based upon statutes similar to T.C.A. § 37–233, which provides that a juvenile adjudication in Tennessee is "not a conviction of crime" and that:

> The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court, whether before or after reaching majority.

■■ It should be borne in mind, however, that the state's voiced policy of protecting a juvenile offender is not sacrosanct, but must give way where proof of a prior juvenile adjudication is material to show bias, prejudice or ulterior motive on the part of the witness. *Davis v. Alaska, supra.* Rule 609(d) of the Federal Rules of Evidence provides guidelines for the admissibility in evidence of prior juvenile adjudications which, to us, has the salutary effect of carrying out the state's policy of protecting the juvenile offender and at the same time protecting the rights of an accused, including his right of confrontation and we now adopt the rule. It provides that:

> (d) Evidence of juvenile adjudications is generally not admissible under this Rule. The Court may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission of the evidence is necessary for a fair determination of the issue of guilt or innocence.

■ Implicit within the requirement of a showing of the necessity of the evidence for a fair determination of guilt or innocence is the policy that juvenile adjudications are not to be used on collateral matters. But aside from this, the evidence of the juvenile adjudications against witnesses in this case does not meet the requirements for admissibility set forth in 609(d). The only indication of the nature of the offenses charged against the juvenile witnesses was the statement by the prosecutor that Jackie Shahan's delinquency was on a charge of

"shoplifting" and Jimmy Perry's was "for a fist fight or beating, something physical." There was no showing that the "fist fight" was a felony, and the offense is not a crime involving dishonesty; consequently, the offense would not be admissible to attack the credibility of an adult, which is the first requirement of Rule 609(d) for admissibility in evidence of juvenile adjudications. *See State v. Morgan, supra*, and Rule 609(d), Federal Rules of Evidence.

■ "Shoplifting," Jackie Shahan's offense, can be either a misdemeanor or a felony, depending upon the value of the merchandise taken. T.C.A. § 39–4235. Here the prosecutor indicated to the court that the offense was a misdemeanor. However, shoplifting is a form of theft and is a crime involving dishonesty. *E.g., Price v. State*, 589 S.W.2d 929, 932 (Tenn.Crim.App. 1979); *Arnold v. State*, 563 S.W.2d 792, 795 (Tenn.Crim.App.1977). A conviction for such an offense can be used to test the credibility of an adult witness. *State v. Morgan, supra.* This being so, the second requirement of 609(d) comes in to play. Can it be said that the admission in evidence of Shahan's delinquency conviction for shoplifting is necessary for a fair determination of the issue of guilt or innocence of William Robert Butler? This question must be answered in the negative as the testimony of Jackie Shahan was not critical to a decision in this case as Shahan did not witness the homicide or the events that preceded the homicide. Furthermore, there were four eyewitnesses, who did testify.

Under the state of this record, and for the reasons stated, we are of the opinion that the evidence of prior juvenile adjudications tendered to impeach the general credibility of the juvenile witnesses was properly excluded by the trial judge, and that the Court of Criminal Appeals was in error in holding to the contrary.

The Court of Criminal Appeals also cited as a basis of its reversal of the conviction of Mr. Butler, the fact that testimony of Nancy Lou Solchenberger tending to show the state of mind of Mrs. Butler and her animosity toward her husband, was excluded from consideration by the jury.

The excluded testimony consisted of statements by Mrs. Butler in conversation with Ms. Solchenberger some three or four days prior to the shooting. According to Ms. Solchenberger, she asked Mrs. Butler if she and Bobby (Mr. Butler) were still together. Mrs. Butler replied no, that she wanted a divorce but that Bobby wouldn't give her one, and went on to say "[she was going] to get rid of that son-of-a-bitch one way or another." When asked what she meant, Mrs. Butler opened her purse and showed a white-handled .22 caliber pistol. The threat implicit in statements attributed to Mrs. Butler was not communicated to her husband. Since the threat was not communicated to Mr. Butler, the trial judge refused to allow Ms. Solchenberger to relate the conversation to the jury. The witness was allowed to testify that Mrs. Butler had a pistol in her handbag at the time she was talking with her. It should be noted, as pointed out by the Court of Criminal Appeals, that "keeping the full circumstances of its (the gun's) exhibition from the jury drained this witness' testimony of its vitality."

■ The character of the deceased for violence, as well as her animosity toward the defendant, as indicated by words and actions at the time of the killing and before, are proper matters for the consideration of the jury upon the question of self-defense. *Henley v. State*, 520 S.W.2d 361, 363 (Tenn. Crim.App.1974). In some cases where self-defense is an issue, uncommunicated threats made by a deceased against a defendant are admissible as going to the state of mind of the deceased. *Little v. State*, 65 Tenn. 491 (1873). However, the applicability of this rule is limited, and it becomes operative only where relevant to explain the conduct of the deceased in establishing who was the aggressor. *Little v. State, supra.*

■ The state takes the position that evidence showing Mr. Butler was the aggressor is overwhelming and, consequently, the uncommunicated threat of the deceased

against the safety of her husband is not admissible. As to this argument, we would point out that it is not the province of this court or of the trial court to weigh evidence and decide who is the aggressor. That is a question for the jury if there is any evidence tending to show that Mrs. Butler was the aggressor. There is such evidence in this case, in the testimony of Mr. Butler that his wife went to the trailer, armed herself, and had the pistol in her hand, partly concealed by her folded arms, as she approached her husband's automobile.

With the evidence in this state, we agree with the Court of Criminal Appeals that Mr. Butler was entitled to show the state of mind of the deceased so the jury could determine who was the true aggressor. To foreclose the jury from hearing Ms. Solchenberger's testimony on this issue was error, which in our opinion requires a retrial of the case.

The remaining issue is directed to the trial judge's refusal to permit Mr. Butler to amend his motion for a new trial. The motion for a new trial was heard on November 7, 1979, but the order was not entered until November 21, 1979. A motion to amend the motion for a new trial was filed on November 12, 1979, setting forth what purported to be newly discovered evidence. Attached to the motion was an affidavit of Winford Whitten of Woodstock, Tennessee, stating that he witnessed the shooting and that Mrs. Butler had a pistol as did a man standing at the corner of Mrs. Butler's trailer. An unsworn transcript of a statement given by Mr. Whitten was filed the following day.

At the hearing of the motion to amend, counsel for Mr. Butler represented to the court that he had known of the existence of an eyewitness, but had been unable to learn who he was until Mr. Whitten made himself known and gave his affidavit.

The Trial judge, however, did not consider the merit of the motion, but accepted the State's argument that an amendment would not be appropriate under Rule 33 of the Tennessee Rules of Criminal Procedure. The rule provides in pertinent part that the "court shall upon motion allow

amendments liberally *until the day of the hearing* of the motion for a new trial." (emphasis added) We would point out, however, that the rule does not prevent a judge, in his discretion, allowing an amendment to a motion for a new trial at any time the trial judge has jurisdiction of the case. As pointed out in Rule 2 of the Tennessee Rules of Criminal Procedure, "the rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." The ground of the amendment to the motion for new trial was basic to the guilt or innocence of Mr. Butler, and its validity should have been considered by the trial judge at the earliest possible time.

The judgment of the Court of Criminal Appeals reversing the conviction of second degree murder and remanding the case for a new trial is affirmed.

HARBISON, C. J., and FONES, BROCK, and DROWOTA, JJ., concur.