**STATE of Tennessee, Appellee,**

v.

**Jerry Gerald BOWERS, and Terrion Lee Cole, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

April 6, 1988.

Permission to Appeal Denied by Supreme Court Dec. 12, 1988.

Hugh Harvey, Jackson, for Jerry Gerald Bowers.

Charles Patterson, Jackson, for Terrion Lee Cole.

W.J. Michael Cody, Atty. Gen. & Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, Jerry Woodall, Dist. Atty. Gen., R. Leigh Grinalds, Asst. Dist. Atty. Gen., Jackson, for State.

## OPINION

JONES, Judge.

The defendants, Jerry Gerald Bowers and Terrion Lee Cole, were convicted of burglary third degree and petit larceny by a jury of their peers. The trial court sentenced Bowers to serve a term of seven (7) years in the Department of Correction for the offense of burglary third degree and three (3) years in the Department of Correction for the offense of petit larceny. The trial court sentenced Cole to serve a term of ten (10) years in the Department of Correction for the offense of burglary third degree and three (3) years in the Department of Correction for petit larceny. The trial court ordered the sentences to be served concurrently.

The defendants appealed to this Court as of right after the trial court denied their motions for a new trial. Tenn.R.App.P. 3(b).

During the early morning hours of May 26, 1986, a service station, located in Jackson, Tennessee, was burglarized. Entry was obtained by breaking a lock securing the front door. A quantity of beer was stolen from the station.

A witness, who turned eighteen shortly before trial, testified that on the morning in question he and his cousin were enroute to the home of the cousin's girlfriend when he saw an individual run into the front door of the service station and immediately enter the station. Shortly thereafter he saw two individuals leave the station through the front door. Both individuals were carrying cases of beer. As the defendant and his cousin were walking through an alley, the two individuals passed the witness. He recognized the two individuals as "Little Jake", Bowers, and "Terry", Cole.

Approximately two days after the burglary the witness told the owner of the service station that he had witnessed the burglary. Later, the owner and the witness went to the Jackson Police Department where the witness gave a statement, provided the police with the "street" or "funny" names of the individuals responsible, identified a photograph of Bowers, and provided the police with Cole's address. He later identified a photograph of Cole.

The testimony of this witness is the only evidence which establishes the defendants' guilt.

Defense counsel attempted to question the witness about his juvenile adjudications. The assistant district attorney general interposed an objection. After a lengthy hearing the trial court sustained the objection, and defense counsel were not permitted to question the witness about his juvenile adjudications.

The record reveals the witness had juvenile adjudications for an attempt to commit felony by fraud, third degree burglary, larceny by trick, and aggravated assault on two occasions; and the witness was on probation when he saw the burglary in progress. The record further reflects that the witness was found guilty of assault and battery on the 3rd day of June, 1986, just six days after the witness had given his statement to the officers; and the juvenile court simply continued his existing probation. On June 12, 1987, two weeks before the trial commenced and four days after his eighteenth birthday, the defendant was convicted of aggravated assault; and the juvenile court placed the witness on unofficial probation.

■ In *State v. Butler*, 626 S.W.2d 6 (Tenn.1981), our Supreme Court adopted Rule 609(d) of the Federal Rules of Evidence. This rule provides that:

> Evidence of juvenile adjudications is generally not admissible under this Rule. The Court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the Court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

As can be seen from a reading of this rule, three requirements must be satisfied before a juvenile adjudication may be used to impeach a witness. First, the witness must be a person other than the accused. The rule prohibits the use of a juvenile adjudication to impeach the accused. *State v. King*, 718 S.W.2d 241, 248 (Tenn.1986);

*State v. Dixon*, 656 S.W.2d 49, 51–52 (Tenn.Crim.App.1983). Second, the offense, if committed by an adult, must be admissible to attack the credibility of an adult witness. *State v. Turnbill*, 640 S.W.2d 40, 47 (Tenn.Crim.App.1982). Third, the admission of the juvenile adjudication must be necessary for a fair determination of the accused's guilt or innocence. *State v. Butler*, supra, 626 S.W.2d at 11.

Our Supreme Court adopted this rule because it "has the salutary effect of carrying out the State's policy of protecting the juvenile offender and at the same time protecting the rights of an accused, including his right of confrontation...." 626 S.W.2d at 10. However, the Court made it clear that it was not abandoning in toto the legislative mandate contained in T.C.A. § 37–1–133(b), which bars the collateral use of juvenile adjudications. The Court said "[i]mplicit within the requirement of a showing of the necessity of the evidence for a fair determination of guilt or innocence is the policy that juvenile adjudications are not to be used on collateral matters." 626 S.W.2d at 10. In other words, the requirement embraces this State's voiced policy of protecting juvenile offenders; and the wholesale use of juvenile adjudications to impeach witnesses will not occur as a result of the adoption of Rule 609(d).

■ In the case *sub judice* the requirements mandated by Rule 609(d) of the Federal Rules of Evidence are established by the record.

First, the witness is a person "other than the accused."

Second, there are several juvenile adjudications for offenses which could be utilized to impeach an adult witness if the offense had been committed by an adult. The offenses of attempt to commit a felony by fraud, third degree burglary, and larceny by trick are offenses which involve dishonesty; and these convictions would be admissible to test the credibility of an adult witness without regard to their prejudicial

effect. See *State v. Cole,* 665 S.W.2d 407, 410 (Tenn.Crim.App.1983); *State v. Hardison,* 705 S.W.2d 684, 686 (Tenn.Crim.App. 1985); *State v. Miller,* 737 S.W.2d 556, 558–559 (Tenn.Crim.App.1987). Convictions for the offenses of aggravated assault and felonious assault are likewise admissible if their probative value is found to outweigh their prejudicial effect and otherwise meet the criteria established by our Supreme Court in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976).

Third, the admission of the juvenile adjudications was absolutely essential to a fair determination of the defendants' guilt or innocence. See *State v. Hill,* 598 S.W.2d 815, 819 (Tenn.Crim.App.1980). As can be seen, the credibility of this witness was crucial to the State's case against the defendants. The assistant district attorney general devoted his entire summation to this issue. He told the jury: "The question, ladies and gentlemen, is—is Mr. Charles Taylor a credible witness worthy of your belief? ... I submit that there is no reason for you not to believe Mr. Charles Taylor in his identity of these two defendants." At another point in his argument he told the jury: "I submit, ladies and gentlemen, there has been no proof—no testimony whatsoever to impeach Charles Taylor's testimony." Later, he told the jury: "I submit that Charles Taylor is a credible witness." He concluded his rebuttal argument by telling the jury: "I submit that he is a credible witness. I submit that he is as good a witness as I have seen in this courtroom. And I submit that the story that he told you, whether it makes sense in terms of what somebody ought to do—whether it is smart that they are criminals or not, it's credible testimony...."

The testimony of the witness raises several questions regarding his bias and ulterior motives.

The witness didn't report the burglary immediately. When he did report the burglary, he failed to tell the police he was with his cousin when he witnessed the burglary. These facts raise several questions.

Did the witness and his cousin commit the burglary and steal the beer? Was the account of the offense given by the witness to the owner and the Jackson Police Department for the purpose of removing himself as a potential suspect? Did the witness fail to mention to the owner and the police that he was with his cousin since it is obvious one man could not carry away seven cases of beer in quart bottles? Or was the witness supposed to be with his cousin on the evening in question, but, instead was burglarizing the service station? Is this the reason the witness did not want his parent to know where he was or what he saw on the evening in question when he told the police to meet him beside a commercial building to view Cole's photograph? It must be remembered that the defendant has a juvenile adjudication for burglary third degree, and, furthermore, he was on probation when the offense occurred.

The witness testified that he came forward and cooperated with the Jackson Police Department because his conscience began to bother him. He testified he "knew it was wrong" not to come forward. He also related that he had known the owner of the service station since he "was a real little bitty boy" and thought he "owed him something." However, the owner of the station testified he was "not acquainted" with the witness. Like the defendants, he only knew the witness by sight. If this is true, was the real reason the witness came forward because he was on probation, he had violated his probation by committing the offense of assault and battery, and his "cooperation" was an attempt to insulate himself from being sent to the Department of Correction? The record reflects the witness has a juvenile adjudication for assault and battery; and the date of disposition was just six days after he told the owner and police he had witnessed the burglary. His existing probation was simply continued.

The witness apparently committed the offense of aggravated assault following

the adjudication for assault and battery. Just two weeks prior to trial the witness was placed on unofficial probation for aggravated assault. This was four days after his eighteenth birthday. This disposition too raises several questions. Why wasn't the witness ordered to be tried as an adult? Was this disposition made in view of the witness' importance in this case? Since credibility was the only issue, the State certainly didn't want the witness in jail or convicted of a major felony offense when he testified at the defendants' trial.

Contrary to the contention of the defendants, the juvenile adjudications were not admissible to challenge the credibility of the witness generally. *State v. Butler*, supra; *State v. Turnbill*, supra. The rule announced in *Butler* is limited in scope to juvenile adjudications which are material to show the bias, prejudice or ulterior motives of a witness. *State v. Turnbill*, supra. However, the juvenile adjudications for burglary third degree and aggravated assault, two counts, were admissible for the limited purpose of establishing the bias and ulterior motives of the witness. *State v. Butler*, supra; *State v. Hill*, supra. See *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Consequently, the trial court committed error of prejudicial dimensions when he ruled that the witness could not be questioned about any of his juvenile adjudications. *State v. Hill*, supra; *Davis v. Alaska*, supra.

The judgments of the trial court are reversed; and both cases are remanded to the trial court for a new trial.

DUNCAN, P.J., and REID, J., concur.