# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 6, 2011

## STATE OF TENNESSEE v. ERIC SIMS

**Direct Appeal from the Criminal Court of Shelby County**
**No. 0806973      W. Otis Higgs, Judge**

**No. W2011-00678-CCA-R3-CD  - Filed March 30, 2012**

The Defendant, Eric Sims, was convicted by a Shelby County jury of two counts of aggravated robbery, a Class B felony.  The trial court sentenced the Defendant as a standard offender to eight years on each conviction to be served concurrently.  The Defendant filed an untimely notice of appeal, raising three issues: (1) whether the evidence is sufficient to support his convictions for aggravated robbery; (2) whether the trial court erred by allowing the State to question the Defendant about his arrest involving an explosive device at school when he was fourteen years old; and (3) whether the trial court erred by instructing the jury as to all three subsections of the criminal responsibility statute, Tennessee Code Annotated section 39-11-402 (2006).  After a careful review of the record, we hold that the trial court erred by instructing the jury as to all three subdivisions of the criminal responsibility statute. We, however, conclude that the Defendant failed to prove that this error probably changed the outcome of the trial.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

John P. Pritchard (at trial) and Lance R. Chism (on appeal), Memphis, Tennessee, for the appellant, Eric Sims.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; Steve Jones, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND FACTS & PROCEDURE

The Shelby County Grand Jury indicted the Defendant[1] on October 21, 2008, of two counts of aggravated robbery, a Class B felony. The Defendant was convicted of the indicted offenses following a jury trial held October 26-28, 2010, at which the following evidence was presented.

In the late morning of July 23, 2008, Santos Nava ("Santos")[2] and his father, Roberto Nava ("Roberto"), were laying brick in the front yard of their home on Tessland Road in Shelby County. As the Navas worked, two men, Dareo Lynn and the Defendant, twice walked by the house before finally stopping on the third such occasion. While the Defendant remained on the sidewalk, Lynn approached Santos and pointed a pistol in his face demanding money. Santos testified that he was "afraid."[3] Lynn reached into Santos's pants pocket with his free hand and took Santos's wallet. Lynn then turned to Roberto and took his wallet. Santos testified that while he and his father were being robbed, the other man watched from approximately twenty-five feet away. After Lynn had taken both men's wallets, Lynn and the Defendant ran from the scene together.

The victims contacted the police. Memphis Police Officer Danny Manning responded to the call at around 11:30 a.m. and interviewed the victims at their home. Officer Manning then checked the neighborhood, speaking with people who were outside. The neighbors told him that they saw the two perpetrators running from the victims' house to another house approximately two blocks away. Officer Manning and several other officers received consent to enter the house from an unnamed male adult. There they found the Defendant and Lynn hiding in a bedroom. Officer Manning found one of the men hiding in the closet while the other man was hiding underneath the bed.[4] Also in the bedroom, officers found two wallets belonging to Santos and Roberto, money, and a handgun. Less than an hour elapsed

---

[1] The Defendant was sixteen years old at the time of the offense. The Juvenile Court of Memphis and Shelby County entered an order on August 13, 2008, holding him for prosecution and sentencing as an adult.

[2] Because the victims share the same surname, for the sake of clarity, we will refer to them by their first names only. We intend no disrespect.

[3] Santos testified through the aid of an interpreter. Roberto did not testify because, according to Santos, he was in Mexico at the time of the trial.

[4] Officer Manning identified the Defendant as one of the men hiding in the bedroom although he did not indicate whether the Defendant was found in the closet or underneath the bed.

between the time Officer Manning arrived at the scene and the time he arrested the Defendant and Lynn.

Santos and his father were shown a photographic lineup at the police station but neither could identify who robbed them. When asked at trial if he recognized the Defendant as the person standing on the sidewalk during the robbery, Santos said, "I don't remember him."

Memphis Police Sergeant Christopher Kee interviewed the Defendant at the police station on the date of the offense. Sergeant Kee contacted the Defendant's father, who came to the police station and remained with the Defendant throughout the interview. Sergeant Kee advised the Defendant of his Miranda rights in the presence of the Defendant's father, and the Defendant and his father signed a waiver of rights form. The Defendant then provided a written statement that provides, in pertinent part, as follows:

Q: Did you rob 2 Hispanic males on today's date at 3768 Tessland?

A: Yes.

Q: What was your role in the robbery?

A: I was the lookout.

Q: Who committed the robbery with you?

A: Dareo Lynn

Q: How do you know Dareo?

A: From [s]chool. He is a friend of mine.

Q: Did you spend the night with Dareo last night?

A: Yes.

Q: Tell me in your own words what happened before[,] during and after the robbery.

A: We were walking up. Dareo was telling me that he was going to run up there and get they [*sic*] wallets. I told him that's on you, but [I'm] going to

keep walking. He told me to look out. I told him ok. He had a silver gun with a gray handle. He ran threw [*sic*] the yard and pointed the gun at them and asked them for they [*sic*] money. I kept walking. He got the money and told me to come on. We ran to Dareo's house.

Q: How much money did Dareo get?

A: 4-5 dollars.

Q: How much did he give you?

A: He gave me $2.
. . . .

Q: When did Dareo say that he was going to do the robbery?

A: Last night.

Q: Were you acting as the look out in this robbery?

A: Yes sir.

Q: Was that planned last night?

A: No.

At trial, the Defendant testified that he spent the night before the robbery at Lynn's house where the two of them planned to commit a robbery the next day. On the day of the robbery, while the Defendant and Lynn were walking from a friend's house, the Defendant noticed that Lynn had a gun. As they approached the victims' home, Lynn told the Defendant that he planned on robbing the victims. At this point the Defendant became "scared" and "spooked out." He said that he told Lynn that "he can do what he do and I'm going to leave that alone and keep going." The Defendant testified that he never went into the yard and never had a weapon. He conceded that he saw Lynn rob the victims and that he left the scene at the same time as Lynn. He also admitted that Lynn gave him two dollars "just to keep my mouth closed."

On cross-examination, the Defendant initially denied that he acted as a lookout during the robbery. He indicated that this was the first time that he had been under police investigation and that his written statement was the product of his being "young" and

-4-

"scared" during the police interview. However, later during cross-examination, the Defendant confirmed the truthfulness of his written statement in the following exchange with the prosecutor:

> Q: Let me ask you this. When [the police] asked you ["]Did you rob two Hispanic males on today's date at 3768 Tessland,["] did you answer yes?
>
> A: Yes, sir.
>
> Q: Was that true?
>
> A: Yes, sir, it was true.
>
> Q: When they asked you ["]What was your role in the robbery,["] did you answer ["]I was the lookout.["]
>
> A: Yes, sir, I answered it, sir.
>
> Q: Was that true?
>
> A: Yes, sir.

The prosecutor's questions followed in this vein until the Defendant affirmed that he had told police each line in his written statement and that each line was true.

During redirect examination, the Defendant's trial counsel asked whether the Defendant had "ever been arrested for any violent offense, any robbery, any theft of any sort." The Defendant replied that he had not. During a jury out hearing, the State argued that trial counsel had opened the door to the Defendant's prior juvenile arrests. Specifically, the State asked to question the Defendant regarding a juvenile arrest when he was fourteen years old. The State asserted that the Defendant had been arrested for reckless endangerment after placing a homemade explosive device in a bathroom at school. The State wished to contradict the Defendant's testimony that he had never been arrested for a violent offense and that the present offense was the first time he had been in contact with police. The trial court permitted the State to question the Defendant about the incident.

When the jury returned, the prosecutor asked the Defendant whether he had been "arrested for an incident involving an explosive device" at school when he was fourteen years old. The Defendant replied that he had and admitted that the present offense was not the first time that he had been involved with the police or the court system. On redirect

examination, the Defendant stated that the explosive device was merely "a plastic bottle and some bathroom cleaner and aluminum foil." He said that when he set it off, which he did as a prank, it "just popped, [and] made a loud noise." The trial court did not give a limiting instruction at the time of this testimony. At the close of all the proof, the trial court did instruct the jury that it was not to consider evidence of another offense in determining whether the Defendant was guilty of the indicted crimes.

The court also charged the jury with all three subsections of the criminal responsibility statute, Tennessee Code Annotated section 39-11-402. In closing arguments prior to the court's instructions, the prosecutor told the jury that its theory of criminal liability was premised only on subsection (2) of the criminal responsibility statute and that the State did not contend that subsections (1) and (3) applied.

After deliberations, the jury convicted the defendant of two counts of aggravated robbery. The trial court sentenced the Defendant as a standard offender to eight years for each conviction with the sentences to run concurrently.

ISSUES PRESENTED

On appeal, the Defendant argues that: (1) the evidence is insufficient to support his convictions for aggravated robbery; (2) the trial court erred by allowing the State to question the Defendant about his arrest involving an explosive device at school when he was fourteen years old; and (3) the trial court erred by instructing the jury as to all three subsections of the criminal responsibility statute.

ANALYSIS

As an initial matter, we note that trial counsel filed an untimely motion for new trial, which resulted in an untimely notice of appeal. A motion for new trial must be made in writing "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This thirty-day time limit is mandatory and may not be extended by the trial court. Tenn. R. Crim. P. 45(b)(3). Thus, a trial court lacks jurisdiction to hear and determine a motion for new trial that was not timely filed. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Where the trial court nevertheless hears and decides the merits of an untimely motion for new trial, the trial court's order on the motion does not validate the motion. State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (citing Dodson, 780 S.W.2d at 780 (noting that trial court has "no alternative but to dismiss the motion" for new trial)).

Because the Defendant's untimely motion for new trial was a nullity, it did not toll the thirty-day period for filing a notice of appeal in this Court. State v. Davis, 748 S.W.2d 206,

207 (Tenn. Crim. App. 1987); Tenn. R. App. P. 4(a), (c). However, because a timely filed notice of appeal is not a jurisdictional prerequisite for this Court, we may consider certain limited issues in the interest of justice. Tenn. R. App. P. 4(a).

By order entered August 25, 2011, this Court determined that it was in the interest of justice to waive the timely filing of the notice of appeal document. See Tenn. R. App. P. 4(a). Although we have waived the notice of appeal time requirement, our review is still constrained by the Defendant's failure to file a timely motion for new trial. Dodson, 780 S.W.2d at 780; Davis, 748 S.W.2d at 207. Specifically, we may not consider any issues that were or should have been raised in a motion for new trial. Martin, 940 S.W.2d at 569. Thus, we will review the sufficiency of the evidence, which need not be raised in a motion for new trial in order to preserve appellate review. State v. Vaughn, 279 S.W.3d 584, 593 (Tenn. Crim. App. 2008). We will review any other issues for plain error when "necessary to do substantial justice." Tenn. R. App. P. 36(b); Grindstaff v. State, 297 S.W.3d 208, 219 n.12 (Tenn. 2009).

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence supporting his or her convictions, our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. at 75 (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). It is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

In this case, the jury convicted the Defendant of aggravated robbery on the theory of criminal responsibility. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006). A robbery becomes aggravated, as relevant here, when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a) (2006). Aggravated robbery is a Class B felony. Tenn. Code Ann. § 39-13-402(b).

A person is criminally responsible for an offense committed by another person when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2006). Our supreme court has explained that our criminal responsibility statute is premised on the view that "in addition to the primary criminal actor, aiders and abettors should be held accountable for the criminal harms they intentionally facilitated or helped set in motion." State v. Hatcher, 310 S.W.3d 788, 811 (Tenn. 2010) (quoting State v. Sherman, 266 S.W.3d 395, 408 (Tenn. 2008)). While a person's mere presence during the commission of a crime is not sufficient to confer criminal liability, it is not necessary that one physically commit the underlying offense; encouragement of the principal actor will establish such liability. Sherman, 266 S.W.3d at 408. A person convicted under a theory of criminal responsibility is considered a principle offender as if they committed the underlying offense themselves. Hatcher, 310 S.W.3d at 811.

The Defendant argues that no reasonable juror could have concluded that he had the requisite intent to promote or assist Lynn in committing the underlying robberies or to benefit in their proceeds. He points out that he was unarmed, stood approximately twenty-five feet away from the robbery, and never spoke to or confronted the victims. The Defendant testified that although he planned with Lynn to rob someone, when the time came, he was too scared to follow through with his criminal plans. He directs our attention to portions of his written statement as showing a lack of intent to rob the victims: "[Lynn] was telling me that he was going to run up there and get they [*sic*] wallets. I told him that's on you, but I'm going to keep walking." Likewise, at trial, the Defendant testified that he told Lynn that "he can do what he do and I'm going to leave that alone and keep going."

After reviewing the record as a whole, we cannot agree with the Defendant that no reasonable juror could have found him guilty of the robberies on a theory of criminal responsibility. The Defendant planned with Lynn the night before to commit a robbery the next day. He and Lynn twice walked in front of the victims' house in apparent preparation for the crime. While the Defendant points to his written statement as evidence that he abandoned the criminal enterprise, he admitted in both his written statement and at trial that

-8-

he agreed to serve as a lookout while Lynn committed the robberies. The Defendant stated that he kept walking during the robberies; however, Santos testified that the Defendant stood and watched as Lynn took the victims' wallets at gunpoint. By his own admission, the Defendant did not flee the scene until after the robberies were completed, at which point he ran with Lynn to Lynn's house. The Defendant was found hiding with Lynn in a bedroom where a handgun and the victims' wallets were found. He admitted receiving two dollars from Lynn.

To the extent that the jury's verdict implicitly rejects the Defendant's claims, we will not disturb the verdict. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). There is no question that Lynn was the person who physically robbed the victims; however, the theory of criminal responsibility contemplates this precise scenario, where the Defendant "knowingly, voluntarily and with common intent united with the principal offender in the commission of the crime." Sherman, 266 S.W.3d at 408 (citations omitted). The evidence presented was clearly sufficient to support the convictions. Accordingly, the Defendant is not entitled to relief on this issue.

## Plain Error Review

On appeal, the Defendant has presented two issues for plain error review. The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This Court may find plain error only if all five of the following factors are present: "(1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice." State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010) (citing State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)); see also State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). We need not consider all five factors when the record clearly establishes that at least one of the factors is not met. State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010). It is the defendant's burden to persuade this Court that the trial court committed plain error and that the error "was of sufficient magnitude that it probably changed the outcome of the trial." Hester, 324 S.W.3d at 56 (citing State v. Bledsoe, 226 S.W.3d 349, 354-55 (Tenn. 2007)).

### *Prior Juvenile Offense*

The Defendant argues that the trial court committed plain error when it allowed the State to cross-examine the Defendant regarding his arrest as a fourteen-year old for setting

off an explosive device in a school bathroom. The State argues that this testimony was not so significant that it probably changed the outcome of the trial. We agree with the State.

The basis for the Defendant's assertion of error is that, generally, a defendant may not be impeached through the use of juvenile adjudications. See State v. Bowers, 762 S.W.2d 889, 891-92 (Tenn. 1988); Tenn. R. Evid. 609(d); see also Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, TENNESSEE LAW OF EVIDENCE § 6.09[8] (5th ed. 2005). However, we need not determine whether the trial court erred in allowing this testimony because we conclude that substantial justice does not require relief. Evidence that the Defendant set off a prank explosive device when he was fourteen years old was inconsequential in light of the overwhelming evidence of his guilt. Moreover, the trial court instructed the jury that it was not to consider evidence of other crimes when deliberating on the indicted offense. See State v. Reid, 164 S.W.3d, 286, 323 (Tenn. 2005) (stating that a jury is presumed to have obeyed a trial court's curative instruction). The Defendant has not established that the outcome of his trial would probably have changed had this testimony been excluded. Accordingly, the Defendant is not entitled to relief on this issue.

*Jury Instruction*

The Defendant next argues that the trial court committed plain error by improperly charging the jury on all three subsections of the criminal responsibility statute, Tenn. Code Ann. § 39-11-402, when the evidence at trial only supported an instruction as to subsection (2). The State appears to concede in its brief that the record does not support instructions on subsections (1) and (3), but argues that these instructions did not affect the outcome of the trial. We agree with the Defendant that the trial court improperly charged the jury, but ultimately conclude that the Defendant is not entitled to relief on this issue because he has failed to show that such an error probably changed the outcome of the trial.

The statute in question provides that a defendant may be found "criminally responsible for an offense committed by the conduct of another" person in the following circumstances:

> (1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Tenn. Code Ann. § 39-11-402 (2006).

Here, the trial court instructed the jury as to all three subsections of section 39-11-402. In closing arguments before the instructions were delivered, however, the prosecutor told the jury that the State's theory of the crime fit only under subsection (2) and argued that subsections (1) and (3) were inapplicable to the facts of the case.

A trial court has a duty to provide a "complete charge of the law applicable to the facts of a case." State v. James, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). A charge "should not contain inaccurate or inapplicable statements of legal principles that might tend to confuse the jury." State v. Hatcher, 310 S.W.3d 788, 812 (Tenn. 2010) (citations omitted). An appellate court must review the entire charge and invalidate the charge only if, when read as a whole, "it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." James, 315 S.W.3d at 446; State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998).

After reviewing the record, we conclude that instructions as to criminal responsibility under section 39-11-402 (1) and (3) were not warranted by the evidence. Subsection (1) contemplates an offense committed by an "innocent or irresponsible person" whom the accused "causes or aids" to commit the offense. Tenn. Code Ann. § 39-11-402(1); see also Hatcher, 310 S.W.3d at 812. On the facts of this case, such an instruction would require evidence that Lynn, the person who actually committed the robberies, was innocent or irresponsible for his actions. The proof in this case does not support such a theory. Accordingly, the trial court should not have charged subsection (1) of the criminal responsibility statute. Likewise, subsection (3) is only called into play when the accused "is under a legal duty to prevent the offense, or voluntarily undertakes to prevent it." Hatcher, 310 S.W.3d at 812. The evidence did not support that the Defendant was under any such duty to prevent the offense or that he voluntarily undertook to prevent it. Accordingly, the trial court should not have charged subsection (3) of the criminal responsibility statute.

We also find the Tennessee Supreme Court's recent decision in Hatcher instructive in this case as to our plain error analysis on this issue. In Hatcher, the trial court charged the jury with all three subsections of the criminal responsibility statute when only subsection (2) was arguably applicable to the evidence at trial. Id. Compounding the error, the prosecution referred to criminal responsibility under an inapplicable subsection in its closing arguments.

Id. at 813. After conducting a plain error review, the supreme court held that the trial court erred in its instructions as to subsections (1) and (3). Id. at 812. However, the Hatcher court determined that substantial justice did not mandate plain error relief because of the overwhelming proof of the defendant's guilt. Id. at 814.

Likewise, in this case, while the trial court's jury charge was clearly in error,[5] we are unable to conclude that substantial justice requires plain error relief because the Defendant has failed to establish that the error probably changed the outcome of his trial. As discussed above, the evidence in this case amply demonstrates that the Defendant was criminally responsible for these aggravated robberies. The Defendant planned with Lynn to commit a robbery. He agreed to serve, and did serve, as the lookout while Lynn robbed the victims. The Defendant remained at the scene during the robberies and fled with Lynn only after the robberies were completed. The Defendant was found cowering with Lynn in the same room as a handgun and the victims' wallets. Lastly, he received two dollars from the proceeds of the robberies. The proof of the Defendant's guilt was simply overwhelming.[6] In sum, the Defendant has failed to show that the error in the jury charge was so prejudicial that it probably changed the outcome of his trial. Accordingly, the Defendant has failed to demonstrate that he is entitled to plain error relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

JEFFREY S. BIVINS, JUDGE

---

[5] We note that the Tennessee Pattern Jury Instructions, in light of Hatcher, now specifically caution that a trial court should only charge the jury with the applicable theories of criminal responsibility. See 7 Tenn. Pattern Jury Instr. T.P.I. Crim. 3.01, Cmt. 1 (15th ed.). Trial courts should review the pattern instructions on a regular basis and follow the advice offered in the comments to those instructions.

[6] Additionally, in this case, the State repeatedly argued in its closing argument that it was relying solely on subsection (2) for its theory of criminal responsibility. While this argument cannot cure the trial court's error, it is further evidence that the trial court's error in the charge did not probably change the outcome of the trial.