IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1997 SESSION

FILED

May 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9612-CR-00523 |
| | ) | |
| Appellee | ) | |
| | ) | SUMNER COUNTY |
| V. | ) | |
| | ) | HON. JANE WHEATCRAFT, |
| JAMES ALFONSO VAUGHN, | ) | JUDGE |
| a/k/a FUZZ | ) | |
| | ) | |
| Appellant. | ) | (First Degree Murder, Attempted |
| | ) | Murder, Reckless Endangerment) |
| | ) | |
| | ) | |

For the Appellant:

Walter H. Stubbs
554 West Main Street
Gallatin, TN 37066

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Lisa A. Naylor
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Lawrence Ray Whitley
District Attorney General
113 West Main Street
Gallatin, TN 37066

Sallie Wade Brown
Assistant District Attorney

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

**OPINION**

The appellant, James Alfonso Vaughn, appeals as of right his convictions in the Sumner County Criminal Court of first degree premeditated murder, attempted first degree murder, attempted second degree murder, and felony reckless endangerment. He was sentenced to life imprisonment on the murder conviction. For his other convictions, he received an effective sentence of twenty-two years to be served consecutively to the life sentence.

On appeal, appellant argues:

(1)     that the trial court erred in admitting certain statements overheard by police officers in Sheffield, Alabama;

(2)     that the trial court erred in admitting a hearsay statement by an unavailable witness as an excited utterance;

(3)     that the trial court improperly limited defense cross-examination of Detective Susan Morrow regarding her knowledge of suspects other than appellant;

(4)     the trial court erred in allowing the State to treat Alonzo Rogan as a hostile witness;

(5)     that the evidence was insufficient to support the convictions;

(6)     that trial court failed to instruct the jury on all lesser included offenses;

(7)     that the trial court erred in failing to grant a continuance when a potential alibi witness did not appear;

(8)     that the trial court improperly prohibited defense counsel from attacking the credibility of State's witness Stephanie Jenkins;

(9)     that the trial court erred in allowing the State to impeach a defense witness with a juvenile conviction for voluntary manslaughter;

(10)    that the trial court erred in allowing jurors to take notes during the trial; and

(11)    that the trial court erred in imposing consecutive sentences.

A complete review of the record before us reveals no reversible error. Accordingly, we affirm both the appellant's convictions and sentences.

2

**FACTUAL BACKGROUND**

Appellant was indicted for the first degree murder of Tyrone Smith, the attempted first degree murder of Chris Williams, the attempted first degree murder of Tallis Bonds, the attempted first degree murder of Ardell Williams, and one count of felony reckless endangerment as a result of events occurring on July 2, 1995. Around 2:00 a.m. that morning, a group of friends had gathered at "Wing Its," a local restaurant in Gallatin. As many as twenty people were present, including Tyrone Smith, Tallis Bonds, Ardell Williams, Chris Williams, Lemarcus Rickman, Keith Goodrich, Alonzo Rogan, Antonio Bonds, Germaine Mason, Joseph Lyles, and Ernest Redding. Several of those present were drinking beer and smoking marijuana. It was undisputed at trial that a number of those young men belonged to the "Zone 8" gang.[1]

The crowd was gathered outside the restaurant and many were sitting on picnic tables waiting for their food to be served. Parked in a gravel lot across the street was the trailer portion of a tractor trailer. Some of the young men at the picnic table noticed two pair of feet visible under the trailer, as if two people were standing behind it. Suddenly, two men came around the side of the trailer and one said "What's up now, mother_____?" Both men brandished guns and a flurry of gunfire followed. The crowd scattered, with several people fleeing into the restaurant and others running down the street.

Four of those present were injured by the gunshots. Ardell Williams suffered five gunshot wounds to his left thigh and entry and exit wounds on his left ankle. Chris Williams suffered one gunshot wound to the buttocks. Tallis Bonds was shot in the back of his right thigh and the bullet exited just above the knee. He was also shot in the foot. Tyrone Smith was shot once in the left upper abdomen and the bullet exited his right chest area. Smith also had entry and exit gunshot wounds on his left thigh.

_____

[1]Testimony reflected that Zone 8 was a gang of youths from the black community that had been in existence since the late 1980's. Tyrone Smith and his twin brother, Gerome, were two of the founding members.

3

Although Mr. Smith received two surgeries to repair his wounds, he died from complications four days after the incident.

At trial, four eyewitnesses to the shooting, Tallis Bonds, Keith Goodrich, Joseph Lyles, and Lemarcus Rickman, identified appellant as one of the gunmen.[2] Although he later denied doing so, Alonzo Rogan was the first person to identify appellant as a shooter immediately after the incident.

Based on earlier incidents, police believed appellant had motive for shooting Tyrone Smith. In February of 1995, the appellant's uncle, Ronnie Vaughn, was killed by Gerome Smith. Gerome Smith is the twin brother of Tyrone Smith, the murder victim in this case. Law enforcement officials suspected, and the State theorized at trial, that appellant shot Tyrone Smith in retaliation for the murder of his uncle. Police officers testified that between February and July of 1995, the atmosphere on the "north side" of Gallatin had been extremely tense and all police officers were on alert.

A large scale search for the appellant was conducted after the shootings. Following unsuccessful attempts to locate appellant in Gallatin, authorities received information that he could be located at a private residence in Sheffield, Alabama. On July 25, 1995, detectives from Sumner County observed appellant at the residence, but were unable to arrest him at that time.[3] Appellant was finally apprehended on September 14, 1995 outside Cincinnati, Ohio as a result of a routine traffic stop.

Two weapons were found in the attic of the Alabama residence: a Smith and Wesson .357 Magnum and a .38 caliber snub-nosed pistol. Using expended shell casings from the crime scene,[4] ballistics testing disclosed that the seized .357

---

[2]Apparently, the second shooter was Rearno Vaughn, appellant's uncle. However, he and appellant were indicted and tried separately.

[3]Rearno Vaughn was apprehended a short distance from the Alabama residence and indicated that appellant was in the house. However, police were unable to locate him and determined that he fled out the back door of the home.

[4]That evidence consisted of five Winchester brand .357 cartridge cases found near the scene, four nickel-plated .357 metal bullet jackets, and one hollow point .357 nickel-plated metal jacket bullet removed from Chris Williams.

4

Magnum had been used in the shootings. Four other fired cartridge casings recovered at the scene were all fired from the same .45 caliber weapon, but no weapon of that caliber was submitted for comparison purposes.[5] Testing performed on Ardell Williams' clothes revealed that two of his gunshot wounds resulted from contact shots, meaning the muzzle was either touching the garment or less than three inches away.

Appellant submitted alibi proof from his girlfriend's sister. Monica Eason stated that she saw appellant at "Club Malibu" in Nashville on July 2, 1995 between 1:00 and 1:30 a.m. Appellant also introduced proof that it would take approximately thirty-six minutes to drive from Club Malibu in Nashville to Wing Its in Gallatin. In addition, appellant presented proof to contradict a State's witness who testified to speaking with appellant and Rearno Vaughn immediately after the shooting. In rebuttal, the State introduced testimony that Monica Eason had earlier told a police detective that she saw appellant at Club Malibu around 12:00 a.m. on July 2, 1995.

Based upon the foregoing evidence, the jury convicted appellant of first degree premeditated murder of Tyrone Smith, attempted first degree murder of Ardell Williams, attempted second degree murder of Tallis Bonds, attempted second degree murder of Chris Williams, and felony reckless endangerment. Appellant automatically received a life sentence for the first degree murder conviction. At a subsequent sentencing hearing, appellant received twenty-two years for the attempted first degree murder, twelve years on each count of attempted second degree murder, and two years for the reckless endangerment conviction. Those sentences were ordered to be served concurrently to one another, but consecutive to the life sentence.

### STATEMENTS OVERHEARD IN ALABAMA

During surveillance of the private residence in Sheffield, Alabama, Sumner County Detectives observed two black males standing on the front porch. They

---

[5]In addition, three .45 caliber full metal case bullets and one bullet fragment submitted for testing could not be identified to determine whether they were fired through same weapon.

identified those men as appellant and Rearno Vaughn. While observing the men, a car pulled up in front of the residence and an occupant of the vehicle yelled, "Fuzz."[6] In response, the man later identified as appellant, walked over to the car and spoke to the occupant.

Appellant contends that the statement, "Fuzz," was hearsay and should not have been admitted by the trial court. He says that its admission was prejudicial because it was proof of his presence at the home where the weapon used in the shootings was later found. The State responds that the statement was not hearsay and was properly admitted.

Hearsay is a statement made out of court, used in court, to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). Generally, hearsay is not admissible because of its inherent unreliability and the inability to cross-examine the declarant. See Tenn. R. Evid. 802; Neil P. Cohen et al, Tennessee Law of Evidence §801.2 at 491 (3d. ed. 1995). However, when subject to a hearsay exception providing an indicia of reliability, it is within the discretion of the trial court to admit the hearsay statement. See State v. Macleod, 937 S.W.2d 867, 871 (Tenn. 1996); State v. Keels, 753 S.W.2d 140, 144 (Tenn. Crim. App. 1988); Cohen, *supra*, at 492.

We cannot agree with the State's argument that the statement was not offered to prove the truth of the matter asserted and, therefore, not hearsay. The statement was the assertion of a nickname which was being used for identification purposes. The statement was clearly being offered to prove the identity of the individual who responded, which is the truth of the matter asserted. As a result, the statement was hearsay and subject to no apparent exception.

While we believe the statement was hearsay and should not have been admitted, we do not find that reversible error occurred. Its admission did not affect a substantial right of the appellant or the outcome of the proceeding. Tenn. R. App. P.

---

[6]Earlier testimony reflected that appellant's nickname was "Fuzz."

6

36(b). Two detectives had identified appellant as a person at the residence before the hearsay statement was made. Therefore, the jury had already received evidence that appellant was at the residence. The hearsay evidence was cumulative and the error was harmless. Tenn. R. Crim. P. 52(a).

### STATEMENT ADMITTED AS EXCITED UTTERANCE

After appellant spoke to the occupants of the car, he and Rearno Vaughn went inside the Sheffield, Alabama residence. Shortly thereafter, Sumner County Detectives observed either appellant or Rearno Vaughn exit the house, get into a car parked in the driveway, and drive away.[7] Because both men were wanted in Tennessee, police officers conducted a traffic stop and determined that the driver was Rearno Vaughn. He fled on foot and after a brief chase, authorities caught him near the residence.

Rearno Vaughn was subsequently placed in the back of a police cruiser which was then driven to an alley behind the residence. The SWAT team had assembled and was preparing to enter the house to look for appellant. Rearno began beating on the window of the police cruiser and yelling for Detective Stan Hilgadiack of the Gallatin Police Department. Hilgadiack approached the car and Rearno shouted, "I can get him [appellant] out. I can get him out. Please don't kill him. Please don't kill him." Rearno was crying and begging Hilgadiack to let him go into the house. Hilgadiack informed Rearno that appellant was not in the house and walked away from the car. Rearno continued to yell at the detective, who returned to the car. Rearno then said, "No, he wouldn't leave me. He's still in the house. I can get him to give up."

The trial court admitted those statements as excited utterances. Tenn. R. Evid. 803(2). Appellant argues that the statements were not spontaneous, but were made

---

[7]Because the person exited so quickly and both men had similar features, detectives testified that they were uncertain which suspect entered the car.

after the opportunity for reflective thought. As such, he believes they were not subject to a hearsay exception.

As stated above, the admission of hearsay evidence when subject to an exception rests within the sound discretion of the trial court. McLeod, 937 S.W.2d at 871; Keels, 753 S.W.2d at 144. The record supports the trial court's finding that the circumstances surrounding the statements were extremely tense and that the declarant was emotional. The trial court did not abuse its discretion in admitting the statements.

Assuming, *arguendo*, that the statements were inadmissible hearsay, the error in admitting them was harmless. Tenn. R. Crim. P. 52(a). Once again, those statements were merely cumulative proof that the appellant had been present in the house.

## KNOWLEDGE OF OTHER SUSPECTS

Appellant next contends that the trial court erred in prohibiting cross-examination of Detective Susan Morrow regarding her knowledge of other individuals who had motive to shoot the victim. An affidavit attached to the arrest warrant for Rearno Vaughn indicates that Tyrone Smith and his twin brother shot at Charles Crenshaw on two different occasions in February 1995. Because the State theorized the shooting was retaliatory, appellant asserts that the evidence contained in the affidavit was relevant to show that someone other than appellant had a motive to shoot the victim.

Outside the presence of the jury, the trial court ruled that defense counsel could not ask Detective Morrow questions specifically about Charles Crenshaw. Counsel, however, was allowed to question Morrow as to whether she had investigated other suspects in the case. Defense counsel never questioned Detective Morrow in that regard.

8

Commonly referred to as a third party defense, an accused is entitled to present evidence that another individual had a motive to commit the offense with which he is charged. Green v. State, 154 Tenn. 26, 34 (1926); Sawyers v. State, 83 Tenn. 694, 695 (1885); Hensley v. State, 28 Tenn. 243, 245 (1848); State v. Spurlock, 874 S.W.2d 602, 612 (Tenn. Crim. App. 1993). However, such evidence must be competent and must conform to rules governing the admissibility of evidence. State v. McAlister, 751 S.W.2d 436, 439 (Tenn. Crim. App. 1987). In essence, the evidence must be of the type that would be admissible against the third party if he or she were on trial for the offense, and the proof must be limited to such facts inconsistent with the defendant's guilt. See State v. Kilburn, 782 S.W.2d 199, 205 (Tenn. Crim. App. 1989); 22A C.J.S. Criminal Law §729 (1989).

Considering the state of the record before us, we are unable to determine whether the proffered evidence would have been admissible against the third party, Charles Crenshaw, if he were on trial. The proof relative to Crenshaw was contained in an affidavit attached to an arrest warrant. While the affidavit is a part of the record before us, we cannot discern the source or reliability of the information contained therein. The affidavit may well have been premised upon hearsay and, therefore, would have been inadmissible to establish a third party defense. See McAlister, 751 S.W.2d at 439.

Furthermore, appellant did not avail himself of the full scope of cross-examination permitted by inquiring whether the detective investigated other suspects. We cannot speculate as to whether Detective Morrow's answers to such questions would have been favorable or unfavorable to appellant. Because appellant has failed to carry his burden of showing that the information was admissible, the trial court did not err in excluding it. Id.

**ALONZO ROGAN AS HOSTILE WITNESS**

Appellant also argues that the trial court erred in permitting the State to treat Alonzo Rogan as a hostile witness. He alleges that Mr. Rogan's trial testimony did not conflict with his earlier statements to law enforcement authorities. We find this issue to be without merit.

At trial, Alonzo Rogan testified that he was present at Wing Its when the shooting occurred. He saw a man come around the trailer and say "What's up now, mother_____?" However, he could not identify the person. Outside the presence of the jury, the trial court granted the State's request to declare Mr. Rogan a hostile witness and permit leading questions. Upon further examination by the district attorney, Rogan denied that he made earlier statements to local police identifying appellant as the shooter.

Detective Susan Morrow testified that within an hour of the shooting, she spoke with Mr. Rogan and he identified appellant as the shooter. She also taped an interview with Mr. Rogan on August 15, 1995, in which he gave additional statements identifying appellant. Our consideration of those circumstances reveal that Mr. Rogan was properly treated as a hostile witness.

Tennessee Rule of Evidence 611(c) grants the trial court authority to declare a witness hostile and permit leading questions on direct examination. Generally, this occurs when the party calling the witness is surprised by the witness' trial testimony and it is contradictory to the witness' pretrial statements. Floyd v. State, 596 S.W.2d 836, 839 (Tenn. Crim. App. 1979); State v. Darrell Fritts, No. 132 (Tenn. Crim. App. at Knoxville, September 25, 1992), perm. app. dismissed (Tenn. 1993). In addition, Tennessee Rule of Evidence 607 permits any party to attack the credibility of a witness.[8]

_____

[8]Although common law prohibited a party from impeaching his or her own witness, that rule was abolished with the adoption of the Tennessee Rules of Evidence. See Tenn. R. Evid. 607 (Advisory Commission Comments). The consequence of declaring a witness hostile is to permit leading questions on direct examination.

Contrary to appellant's assertion, the record shows that Rogan's trial testimony was in fact contradictory to his earlier statements. He identified appellant as the shooter immediately after the incident and then later gave taped statements confirming that identification. At trial, he denied making such identification. Therefore, the trial court did not abuse its discretion in allowing the assistant district attorney to ask leading questions to impeach Rogan's testimony. Whaley v. State, 216 S.W.2d 17, 18 (Tenn. 1948); State v. Briggs, 501 S.W.2d 831, 838 (Tenn. Crim. App. 1973).

## SUFFICIENCY OF EVIDENCE

Appellant makes several challenges to the sufficiency of the evidence. After a careful review of the record, we find that it supports the guilty verdict on each count of the indictment.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1979).

Appellant first argues that the evidence of identification was insufficient to support a finding that he was the perpetrator of the offenses. While he concedes that several witnesses identified him at trial, he contends that those witnesses were all biased because of their affiliation with the Zone 8 gang. In addition, he argues that the testimony should be discounted because the eyewitnesses were under the influence of intoxicants at the time of the shooting.

All issues concerning the credibility of witnesses and the weight and value to be given the evidence are resolved by the trier of fact, not this Court. Cabbage, 571

11

S.W.2d at 835.  The jury in appellant's case was fully apprised that many of the eyewitnesses were affiliated with the Zone 8 gang and also that several of those present at the scene had been drinking and using drugs on the night of the shooting. It was the jury's duty to resolve those issues and the guilty verdicts accredit the testimony of the State's witnesses.  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  Similarly, any issue with respect to the physical evidence connecting appellant with the crime was resolved against the appellant by the jury.   Those challenges are without merit.

Appellant also argues that the evidence was insufficient to prove premeditation or that he acted intentionally to kill Tyrone Smith.  Tenn. Code Ann. §39-13-202(a)(1) (Supp. 1995).  The appellant contends that proof of a gun belonging to Tyrone Smith being found on a table inside the restaurant supports an inference that Mr. Smith wielded the gun during the shootings.  He suggests those facts mitigate against the required *mens rea*.  That argument, however, is pure speculation.  The record reflects that appellant's defense was that of alibi, not self-defense.  Furthermore, evidence that the appellant was armed with a gun and hiding behind a trailer to watch a group known to be his enemies, supports the jury's finding of premeditation.  When viewed together with additional proof that the victim's brother had murdered appellant's uncle five months earlier, we conclude that the evidence supports a finding of both premeditation and intent.

Lastly, the appellant argues that the evidence is insufficient to prove attempted murder and reckless endangerment.  With respect to the attempted murders, appellant contends that the gunshot wounds to the foot, buttock, thigh and hip fail to show that he attempted to intentionally or knowingly kill the victims.  We are unpersuaded by appellant's argument and further find that his actions in firing numerous gunshots into a crowd of twenty people was overwhelming evidence of reckless endangerment.  Tenn. Code Ann. §39-13-103(a) (1991).

## JURY INSTRUCTIONS ON LESSER OFFENSES

Appellant next contends that the trial court was required to instruct the jury on the offenses of voluntary manslaughter, attempted voluntary manslaughter, and aggravated assault. He argues that the evidence warranted instructions on those offenses and that the failure to do so was reversible error. We disagree.

It is incumbent upon a trial court to give the jury a complete charge of the law based upon the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn.), cert. denied, 476 U.S. 1145, 106 S.Ct. 2261, 90 L.Ed.2d 706 (1986) (citation omitted). See also Tenn. Code Ann. §40-18-110 (1990). The duty is central to a defendant's right to trial by jury and is mandatory "where there are any facts that are susceptible of inferring guilt of any lesser included offense or offenses." State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981) (citations omitted). However, trial courts have no duty to instruct on lesser degree or lesser included offenses where there is evidence of neither in the record. State v. Mellons, 557 S.W.2d 497, 499 (Tenn. 1977) (citations omitted). It is unnecessary to charge a jury where "the charge would be a mere abstraction upon hypothetical questions not suggested by the proof." Wright, 618 S.W.2d at 315 (quoting Strader v. State, 362 S.W.2d 224 (Tenn. 1962)).

In this case, although voluntary manslaughter and attempted voluntary manslaughter are lesser grades of the indicted offenses, there was no evidence to warrant a charge on those offenses. An essential element of both voluntary manslaughter and attempted voluntary manslaughter is "adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. §39-13-211(a) (1991).

The appellant contends that provocation may be inferred from evidence that Mr. Smith's gun was found near the crime scene. That evidence, however, is not sufficient to support a finding of provocation. Other proof from eyewitness testimony revealed that the appellant approached the victim and simply began shooting. We

13

find that the trial court correctly declined to charge on voluntary and attempted voluntary manslaughter.

Moreover, the trial court did not err in refusing to charge the jury on aggravated assault. Our supreme court has held that aggravated assault is neither a lesser grade nor lesser included offense of attempted first degree murder. State v. Trusty, 919 S.W.2d 305, 311-312 (Tenn. 1996). Accordingly, there was no duty to instruct on that offense.

## DENIAL OF CONTINUANCE

Appellant next contends that the trial court should have granted a continuance when a potential alibi witness, Steve Otis, did not appear to testify. On the first day of trial, defense counsel requested a continuance upon informing the trial court that Mr. Otis was absent. Counsel had spoken with Mr. Otis only once in January, 1996, and then had lost contact. The trial court denied appellant's motion, but instructed local law enforcement to locate Mr. Otis since he was under subpoena.

After the jury began deliberations, defense counsel informed the trial court that Mr. Otis had called him that morning about his testimony. Mr. Otis told counsel that he was not subpoenaed and was in the hospital. He also told counsel that he believed he was with the appellant at another location on the date of the shooting. The trial court again denied a continuance. At the hearing on the motion for new trial, counsel reported that Mr. Otis was willing to sign an affidavit stating that he was with the appellant on the day of the shooting. However, counsel had been unable to locate Mr. Otis to sign the document.

The decision of whether to grant a continuance rests within the sound discretion of the trial court. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995), cert. denied ___ U.S. ___, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996); State v. Hurley, 876 S.W.2d 57, 65 (Tenn. 1993), cert. denied 513 U.S. 933, 115 S.Ct. 328, 130 L.Ed.2d 287 (1994). The denial of a continuance results in reversible error only when the

14

decision is arbitrary and the defendant is able to demonstrate prejudice. State v. Dykes, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990).

In this case, the trial court noted that the potential testimony of Mr. Otis was nebulous at best and that appellant had already presented alibi evidence through the testimony of Monica Eason. We find that the trial court did not abuse its discretion in denying the continuance. Cf. Morehead v. State, 409 S.W.2d 357, 358 (Tenn. 1966) (holding that it was reversible error to not grant continuance where the only witness with information pertinent to the defense did not appear).

### CROSS-EXAMINATION OF STEPHANIE JENKINS

Appellant next contends that the trial court erred in limiting his cross-examination of Stephanie Jenkins. In response to defense questioning, Ms. Jenkins confirmed that she had previous interaction with Detective Susan Morrow when she worked on a case involving Ms. Jenkins' daughter. The trial court, thereafter, sustained the State's relevance objection when defense counsel asked Ms. Jenkins whether she went through counseling as a result of her daughter's case. We find no error in that ruling.

Whether the witness had a previous relationship with an investigator in appellant's case may be relevant to demonstrate potential bias of the witness and is a proper matter for cross-examination. See Tenn. R. Evid. 616. However, Ms. Jenkins' need for counseling was not shown to be relevant to her bias and, therefore, had no bearing on any issue in appellant's case. The trial court did not abuse its discretion in this regard. State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992), cert. denied 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

### IMPEACHMENT USING JUVENILE ADJUDICATION

Appellant sought to call Sammy Alexander to impeach the identification testimony from State's witness Keith Goodrich. However, before Mr. Alexander was scheduled to testify, the trial court ruled that if Alexander took the stand he could be

15

impeached using a juvenile adjudication equivalent to voluntary manslaughter. Appellant chose not to call Mr. Alexander in light of that ruling. He now argues that the trial court's ruling was erroneous because Mr. Alexander's prior conviction did not involve dishonesty and was not necessary for a fair determination of guilt.

Tennessee Rule of Evidence 609(d) generally prohibits use of a juvenile adjudication to impeach a witness' testimony. However, where the witness is someone other than the accused, the adjudication may be admitted if: (1) the conviction would be admissible to attack the credibility of an adult and (2) the court determines that the evidence is necessary for a fair determination in the proceeding. Tenn. R. Evid. 609(d); State v. Butler, 626 S.W.2d 6, 10-11 (Tenn. 1981); State v. Bowers, 762 S.W.2d 889, 891 (Tenn. Crim. App. 1988). When acting within the confines of Rule 609, a trial court's decision to permit impeachment using a prior conviction will not be overturned absent an abuse of discretion. State v. Sheffield, 676 S.W.2d 542, 549 (Tenn. 1984); State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996).

The trial court correctly ruled that a conviction for voluntary manslaughter, punishable by incarceration for more than one year, may be used to impeach an adult witness. See Tenn. R. Evid. 609(a)(2); Sheffield, 767 S.W.2d at 549; State v. Wiggins, 729 S.W.2d 291, 294 (Tenn. Crim. App. 1987). Contrary to appellant's assertion, the conviction did not have to involve dishonesty to be admissible against Mr. Alexander.

However, the record is silent concerning whether the evidence was necessary for a fair determination of guilt. In reviewing the case through appellant jurisdiction, we cannot make that factual determination. As a result, we are unable to say whether the trial court's ruling was correct under Rule 609(d). Nevertheless, we are confident that any error was harmless. Mr. Alexander's testimony would have attacked the credibility of only one of four eyewitnesses who testified on behalf of the State. In light

of the significant other eyewitness testimony, any error by the trial court was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## JURORS TAKING NOTES

Under a special instruction, the trial court permitted the jury to take notes during the presentation of proof. Appellant contends that the trial court's instructions were improper and that the use of notes was not reasonably necessary for the jurors to perform their duties.

Whether to allow jurors to take notes during the course of a trial rests within the sound discretion of the trial court. Watkins v. State, 393 S.W.2d 141, 147 (Tenn. 1965); State v. Chance, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989). A defendant is not entitled to relief in that regard unless there is a showing of prejudice. Watkins, 393 S.W.2d at 149. Considering the appellant's inability to show prejudice, we find that the trial court did not abuse its discretion.

## CONSECUTIVE SENTENCES

In his final challenge, appellant contends that the trial court erred in ordering his effective twenty-two (22) year sentence to be served consecutively to his life sentence. We conclude that the trial court properly sentenced the appellant.

When addressing the consecutive nature of an appellant's sentence, we must follow the general principles of sentencing and conduct a *de novo* review of the record. Tenn. Code Ann. §40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. Tenn. Code Ann. §40-35-401 (Sentencing Commission Comments). The presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the trial court considered the relevant sentencing principles, we accord appellant's sentence with the presumption of correctness.

Although consecutive sentences are not to be routinely imposed, they are within the trial court's discretion when certain statutory factors are present. Tenn. Code Ann. §40-35-115 (1991). The trial court found that two factors supported an order of consecutive sentencing: (1) appellant's extensive record of criminal activity; and (2) his status as a dangerous offender. See Tenn. Code Ann. §40-35-115(b)(2), (4) (1990). Those findings are supported by the record.

The presentence report reflects that appellant committed ten offenses between June, 1989, and March, 1993, including reckless endangerment, aggravated assault, simple assault, and drug possession. Appellant was also charged with aggravated burglary, aggravated assault, and three counts of aggravated robbery shortly before he committed the offenses in this case. Additionally, at the time of trial, appellant had two drug charges pending and was facing a murder charge in Davidson County. We find that such a record is extensive.[9] State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994).

Although only one statutory factor is necessary to warrant consecutive sentencing, the record also supports the trial court's finding that appellant is a dangerous offender.[10] The appellant placed human life in great jeopardy when he ambushed a crowd of twenty people with gunfire. Moreover, he showed little regard for human life by shooting unarmed victims as they tried to run away.

As required by law, the trial court correctly found that an extended sentence is necessary to protect the public against further criminal conduct by the appellant and that the sentences reasonably relate to the severity of the offenses. State v.

[9]Although some of appellant's offenses were retired or dismissed upon the payment of costs, they are relevant to establish criminal "activity." State v. Fredrick Sledge, No. 02C01-9405-CR-00089 (Tenn. Crim. App. at Jackson, November 24, 1997), perm. app. filed (Tenn. January 23, 1998).

[10]Appellant's arguments on consecutive sentencing rely upon principles announced in State v. Woods, 814 S.W.2d 378 (Tenn. Crim. App. 1991). In this case, the trial court articulated aggravating circumstances surrounding the offenses to support the dangerous offender classification as required by Woods. Id. at 380.

<u>Wilkerson</u>, 905 S.W.2d 933, 938 (Tenn. 1995). The trial court's order of consecutive sentencing is amply supported by the record before us.

## CONCLUSION

Based upon the foregoing, the appellant's convictions and sentences are affirmed.

_____
William M. Barker, Judge

CONCUR:

\_\_\_\_\_(Not Participating)*_____
Joe B. Jones, Presiding Judge

_____
Paul G. Summers, Judge

---

\*Judge Jones died on May 1, 1998, following a distinguished career as a trial attorney and as a respected member of this Court since his appointment in November, 1986.  He will be greatly missed.